UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

LAWRENCE TYRRELL,           )
                            )
        Plaintiff,           )
                            )
    v.                       )        2:16-cv-00628-JAW
                            )
NANCY A. BERRYHILL, SOCIAL  )
SECURITY ADMINISTRATION     )
ACTING COMMISSIONER,        )
                            )
        Defendant.           )

**ORDER AFFIRMING RECOMMENDED DECISION ON APPLICATION FOR ATTORNEY'S FEES**

When a lawyer performs work a paralegal could perform, this does not make the lawyer a paralegal or something other than a lawyer for billing purposes. The Court addresses a repetitive objection by the Acting Commissioner of the Social Security Administration to attorney's fee applications under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 regarding the circumstances under which an attorney may bill at a lawyer's rate. The Court disagrees with the premise of the Acting Commissioner's argument: that when a lawyer does a task a paralegal might do, the lawyer must bill at a lower rate. Having considered the amount of the attorney's bill, the tasks billed at an attorney rate, and the tasks billed at a paralegal rate, the Court concludes not only that the overall bill is reasonable, but also that, within limits, an attorney who employs paralegals should be accorded a degree of flexibility in a assigning and doing work from case to case and that a lawyer should

bill legal work at a lawyer's rate. The Court affirms the recommended decision of the Magistrate Judge.

I. **BACKGROUND**

On April 3, 2018, the Magistrate Judge issued a recommended decision in which he recommended that the Court grant attorney's fees and expenses to Plaintiff in the amount of $3,229.77. *Recommended Decision on Appl. for Att'y Fees* (ECF No. 27) (*Recommended Decision*). On April 17, 2018, the Acting Commissioner of the Social Security Administration (Commissioner) objected to that portion of the recommended decision that recommended awarding a full attorney rate for certain challenged hours. *Def.'s Obj. to the Magistrate Judge's Recommended Decision on Pl.'s Appl. for Att'y Fees* (ECF No. 28) (*Def.'s Obj.*). Mr. Tyrrell replied on May 1, 2018. *Reply to Obj. to EAJA Appl. for Fees and Expenses* (ECF No. 29) (*Pl.'s Reply*).

A. **The Plaintiff's Request and the Defendant's Response**

To provide the context, it is necessary to start with the Plaintiff's initial motion and the Defendant's initial response. On February 12, 2018, the Plaintiff filed a motion for attorney's fees, requesting an award under the EAJA of $3,251.17 based on an itemized bill. *EAJA Appl. for Fees and Expenses* (ECF No. 24) (*EAJA Appl.*). The bill charged 15.80 hours of attorney time at $198.15 per hour and 1.10 hours of paralegal time at $110 per hour for a total of $3,251.77. *Id.* Attach. 1, *Ex. A*.

On March 5, 2018, the Commissioner filed her opposition to the fee application. *Def.'s Opp'n to Pl.'s EAJA App. for Fees and Expenses* (ECF No. 25) (*Def.'s Opp'n*). The Commissioner objected to the hourly rate being charged for paralegal work and

the hours being billed for attorney work. *Id.* at 1. She urged the Court to reduce the paralegal rate from $110 to $90 per hour to reflect a reasonable paralegal rate. *Id.* at 2-3. She also urged the Court to reduce the attorney time from 15.80 hours to 14 hours, because in her view, Attorney Jackson was including as attorney time what should have been non-compensable or, alternatively, should have been billed at a lower rate. *Id.* at 3-5. Relying on *Pelletier v. Social Security Administration Commissioner*, No. 1:10-cv-00438-DBH, 2011 WL 5545658, at *2, 2011 U.S. Dist. LEXIS 131299 (D. Me. Nov. 10, 2011), *aff'd sub nom.*, *Pelletier v. Astrue*, 2011 WL 6025868 and *Haskell v. Social Security Administration Commissioner*, No. 1:11-cv-00289-GZS, 2012 WL 1463300, at *2, 2012 U.S. Dist. LEXIS 58178 (D. Me. Apr. 24, 2012), *aff'd* 2012 WL 1715256 (D. Me. May 15, 2012), the Commissioner objected to the following itemized entries:

> (1) .10 hours of attorney time for "Receipt and review of signed forms from client;"
> (2) .90 hours of attorney time to "Draft and file complaint and summons, letter and motion for leave to proceed in forma pauperis. Receipt and review of order;"
> (3) .10 hours of attorney time to "Prepare letter regarding service of summons;"
> (4) .10 hours of attorney time for "Receipt and review of notice of appearance for Attorney Makawa;"
> (5) .10 hours of attorney time for "Receipt and review of procedural order, record and answer;"
> (6) .10 hours of attorney time for "Receipt and review of court email re: deadlines;"
> (7) .10 hours of attorney time for "Receipt and review of email re: extension. Receipt and review of motion;"
> (8) .10 hours of attorney time for "Receipt and review of court email re: deadlines;" and
> (9) .10 hours of attorney time for "Receipt and review of emails re: oral argument;" and

3

(10) .10 hours of attorney time for "Receipt and review of Judgment and order."

*Id.* at 4 (citing *EAJA Appl.* Attach. 1 *Itemization*) (*Itemization*). The total disputed attorney time is 1.8 hours. *Id.* at 4-5. The Commissioner argued that the Court should either entirely eliminate this disputed time or order payment at some unstated rate lower than the "full attorney rate." *Id.*

**B. The Recommended Decision**

In his recommended decision, the Magistrate Judge agreed with the Plaintiff on the attorney time issue and agreed with the Defendant on the paralegal rate issue. *Recommended Decision* at 1-4. Reducing the paralegal rate to $90 per hour, the Magistrate Judge recommended that the Court grant the Plaintiff's motion for $3,229.77 out of the total demanded of $3,251.77. *Id.* at 4. The Plaintiff did not object to the reduction of the paralegal hourly rate from $110 to $90, *see Pl.'s Reply* at 1, and the Court accepts the $90 paralegal rate.

The Magistrate Judge was not, however, persuaded that the attorney time to which the Commissioner objected was improperly claimed as attorney time and billed at the normal attorney rate. *Recommended Decision* at 3-4. The Magistrate Judge observed that an attorney has an obligation "to remain aware of the developments in a case." *Id.* at 3. The Magistrate Judge thought that the claimed time was "modest" and neither case cited by the Commissioner established "a rule in this District that an attorney's time to review notices or orders from the court, to prepare a complaint, to prepare a motion for leave to proceed in forma pauperis, or to review other case-related documents was not compensable." *Id.* Instead, the Magistrate Judge

4

interpreted the prior caselaw as requiring the Court to "scrutinize the amount of time devoted to various tasks to determine whether the tasks can more appropriately be accomplished in less time by a person at a lower hourly rate." *Id.* Here, the Magistrate Judge concluded that the attorney time "reflect[ed] tasks consistent with counsel's obligations to his client and the court." *Id.* at 4. He found the requested attorney time "not unreasonable." *Id.*

## II. THE PARTIES' POSITIONS

### A. The Commissioner's Position

In her objection, the Commissioner agrees with the Magistrate Judge that none of the prior caselaw in this District established a rule that an attorney's time to review court notices and orders was not compensable. *Def.'s Obj.* at 2. She contends, however, that the Magistrate Judge "misapprehends the full nature of this Court's prior rulings and the thrust of the Commissioner's argument." *Id.* The Commissioner emphasizes that a clerical task is not elevated into attorney work simply because a lawyer performs it. *Id.* Instead, if the lawyer is performing the work of a paralegal, the lawyer's work should be billed at a rate lower than the full attorney rate. *Id.* at 2-4.

The Commissioner quotes a decision from the District of Massachusetts, *Sinclair v. Berryhill*, 284 F. Supp. 3d 111 (D. Mass. 2018), in which the district court wrote that courts have generally regarded the following activities as administrative or clerical functions for which proportionate fee deductions ought to be imposed: "document preparation, organization, distribution, and copying; drafting emails and

5

other correspondence; data collection; legal cite-checking; scheduling and logistical planning; filing court documents; factual research; and docket review and management." *Def.'s Obj.* at 3 (quoting *Sinclair*, 284 F. Supp. 3d at 116) (quoting *EEOC v. AutoZone, Inc.*, 934 F. Supp. 2d 342, 353-54 (D. Mass. 2013)).

In the Commissioner's view, the mere fact that a lawyer engaged in tasks "consistent with [his] obligations to his client and the court", *id.* (quoting *Recommended Decision* at 4), does not take away from the fact that "[t]he complaints and associated filings in these matters are boilerplate and, unlike the statement of errors, it does not take legal analysis to prepare or submit them." *Id.* (quoting *Pelletier*, 2011 WL 5545658, at *2).

Citing *Haskell*, the Commissioner is also concerned that Plaintiff's counsel is "billing[] entries for certain case-related events rather than recording actual time reasonably expended in the interest of the client." *Id.* (quoting *Haskell*, 2012 WL 1463300, at *2). The Commissioner particularly objects to a full attorney rate for "receipt and review of a notice of appearance and procedural orders." *Id.* The Commissioner again requests that the Court reduce the attorney rate for the disputed 1.8 hours. *Id.* at 4.

### B. The Plaintiff's Reply

The Plaintiff urges the Court to affirm the Magistrate Judge. *Pl.'s Reply* at 1-3. The Plaintiff says that Chief Judge Torresen's decision in *Pelletier v. Berryhill*, No. 1:17-cv-00073-NT (Dec. 20, 2017) "established that there is no merit to these objections." *Id.* at 2. The Plaintiff maintains that the Commissioner is objecting to

6

"the routine steps an attorney is required to take in virtually every appeal." *Id.* The Plaintiff also observes that under the Maine Rules of Professional Conduct, a lawyer is obligated to be diligent, to keep abreast of developments, and to be prepared to discuss matters with the client. *Id.* (citing ME. RUL. PROF. CONDUCT 1.3, comment 1, 1.4(a)(1), (3)). Quoting the Magistrate Judge's rejection of the Commissioner's position, the Plaintiff contends that this Court should follow suit, arguing that the Commissioner has produced "no new reasoning or precedent that would justify a change in the result reached by Judge Nivison." *Id.* at 2-3.

## III. DISCUSSION

### A. The Lawyer's Stock in Trade

Abraham Lincoln reputedly said that "a lawyer's time and advice are his stock in trade." The Court starts with a presumption that when a lawyer spends time on a matter, the lawyer is usually entitled to be paid as a lawyer for the time actually spent. A lawyer's time is properly seen as an opportunity cost. As time is finite, time spent on one case is time not spent on another.

### B. Clerical Tasks

The obverse of this proposition, which the Court also accepts, is that when a lawyer does something that a secretary should do, the lawyer is not entitled to bill at either a lawyer's or a paralegal's hourly rate. *Missouri v. Jenkins*, 491 U.S. 274, 288, n.10 (1989) ("Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them"); *Lipsett v. Blanco*, 975 F.2d 934, 940 (1st Cir. 1992) ("[C]lerical or secretarial tasks ought not to be billed at lawyers'

7

rates, even if a lawyer performs them"). The outer limits are easy. If a lawyer appears before a judge and argues a case, the lawyer is doing something a non-lawyer may not. If a lawyer opens the mail, the lawyer is doing something a secretary may do and usually does. *See Rand v. Town of Exeter*, No. 11-cv-55-LM, 2014 U.S. Dist. LEXIS 138402, at *18 (D.N.H. Sept. 30, 2014) ("[F]ile organization cannot be compensated at Rand's attorney's hourly rate").

In *Missouri*, the United States Supreme Court listed some tasks that could be performed by a paralegal at a lower rate: "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." *Id.*, 491 U.S. at 288 n.10. But the *Missouri* Court also commented that "[m]uch such work lies in a gray area of tasks that might appropriately be performed either by an attorney or a paralegal." *Id.* The list of clerical tasks in *Sinclair* and *EEOC* is broader, but the district court in *EEOC* conceded that "in certain instances, the distinction between 'legal' and 'administrative and clerical' work is less than obvious." *EEOC*, 934 F. Supp. 2d at 354.

### C. Physician Extenders: An Analogue

The medical profession provides a useful analogue. Within a medical office, there are now commonly not only physicians, nurses, and medical secretaries, but other so-called physician extenders, who work under a physician's license. The variety of physician extenders has proliferated over the last few decades, but in

8

general, the term includes physician assistants and nurse practitioners. The physician extenders are authorized to perform some tasks previously within the exclusive domain of physicians, such as conducting physical examinations, ordering and interpreting tests, arriving at diagnoses, and prescribing medicine. When a physician's assistant performs a physical examination, the examination is charged at a physician's assistant's rate, lower than a physician's. But this does not mean that when a physician performs a physical examination, the physician must bill at the physician's assistant rate. Presumably, a physician, more highly trained than a physician's assistant, brings extra value to a physical examination.

The same analysis should apply to lawyers performing work that paralegals may perform. Like a doctor performing a physical examination, when a lawyer interviews a witness or drafts answers to interrogatories, the attorney brings a level of education and experience to the task that justifies the lawyer's hourly rate, even though a paralegal could have conducted the interview or drafted the interrogatory. For example, a paralegal is unlikely to be fluent in the rules of evidence as a lawyer and to be able to place the information in the context of trial strategy.

### D. The Dividing Line and Professional Negligence

One way of looking at the dividing line is whether the activity is a professional act that, if not done or reviewed by a lawyer, could subject the lawyer to a claim of professional negligence. Here, for example, half of the disputed time—.9 hours—is Attorney Jackson's drafting and filing the complaint and summons, the preparation of a letter and motion to leave to proceed in forma pauperis, and the receipt and

9

review of an order. *Def.'s Opp'n* at 4. Even if an element of routine creeps into some legal subspecialties such as Social Security law, if a lawyer files a document with a governmental agency or a court, he is under a professional obligation to make sure it is accurate. The Court does not begrudge Attorney Jackson's drafting and filing a complaint and summons or his review of the motion for leave to proceed in forma pauperis. If the filings had been inaccurate, they could have affected the merits of his client's case and Attorney Jackson's professional standing with the Court. This analysis is by no means conclusive because a secretarial mistake, such as not filing a complaint, can also result in a malpractice claim against the lawyer. Nevertheless, organizing a file is unlikely to trigger a professional malpractice claim; reviewing a complaint might well.

### E. *Haskell v. Social Security Commissioner*

The Commissioner cites *Haskell v. Social Security Commissioner* in support of her position. But in the Court's view, *Haskell* addresses a different issue: billing for case-related events, not for actual time expended. In *Haskell*, the Magistrate Judge scrutinized the attorney's bill (the same Plaintiff's lawyer as in this case) and raised concerns about the timing of the attorney's billing entries in relation to the timing of the paralegal's work on the same matters. *Haskell*, 2012 U.S. Dist. LEXIS 58178, at *4. For example, the Magistrate Judge was troubled that the bill reflected a one-hour record review by the attorney, even though a paralegal drafted the statement of errors five months later. *Id.* The timing of these entries led the Magistrate Judge to question whether counsel was "making billings entries for certain case-related events

10

rather than recording actual time reasonably expended." *Id.* at *4. The Magistrate Judge therefore reduced the paralegal time by 7.5 hours, representing "duplicate attorney time." *Id.*

Citing *Haskell*, the Commissioner wrote that the Magistrate Judge's concern "underpins the Commissioner's objection to the challenged billing entries—especially for entries for receipt and review of a notice of appearance and procedural orders." *Def.'s Obj.* at 3. However, in her objection, the Commissioner did not point out any of the timing issues in this bill that bothered the Magistrate Judge in *Haskell*. If "case-related event" billing has occurred in this case, it is not obvious to the Court, and the Commissioner has not pointed it out.

### F. Court or Agency Notices

In general, the Court is not troubled by an attorney billing at a lawyer's rate the time to review notices from a court or agency. An attorney has a professional duty to review whatever comes out of an administrative agency or a court before which he is representing a client. For example, Attorney Jackson spent .10 hours on different occasions, reviewing a variety of notices from the Court. Typically, a busy lawyer, like Attorney Jackson, does not simply look at the notice, file it in his head, and go on with his day. The notice requires a conscientious lawyer, such as Attorney Jackson, to integrate the import of the court notice, for example a date and time of a hearing or deadline, into the lawyer's work schedule in order to meet a multitude of demands in that case and others. With this said, there is an obvious constraint. It is

11

important that the Commissioner has made no allegation that any of the actual time charged was excessive, which would be a different issue.

## G. *Pelletier* and *Pearson*

The Commissioner also relies on *Pelletier*, a 2011 Magistrate Judge decision. There, unlike this case, the Commissioner "d[id] not challenge the hourly rate of $175. Instead, the Commissioner challenge[d] the fee application as presenting excessive hours of attorney time." *Pelletier*, 2011 U.S. Dist. LEXIS 131299, at *3. In *Pelletier*, as the Commissioner notes, the Magistrate Judge wrote that "[t]he complaints and associated filings in these matters are boilerplate and, unlike the statement of errors, it does not take legal analysis to prepare or submit them." *Id.* at *6. The Magistrate Judge recommended that the Court reduce the attorney's bill in *Pelletier* for 3.2 hours of time spent on clerical tasks to one half of the attorney rate.

In *Pearson v. Social Security Administration Commissioner*, however, the same Magistrate Judge further explained the *Pelletier* ruling. The Magistrate Judge observed that the attorney in *Pelletier* "did not rely on paralegals to perform any of the work associated with her claim." *Pearson v. Soc. Sec. Admin. Comm'r*, No. 1:11-cv-00252-DBH, 2012 U.S. Dist. LEXIS 23359, at *3 (D. Me. Feb. 17, 2012), *aff'd*, 2012 U.S. Dist. LEXIS 32671 (D. Me., Mar. 12, 2012). By contrast, the attorney in *Pearson*, the same counsel as in this case, "achieves certain efficiencies by using paralegals to conduct the in-depth file review and to draft the statement of errors." *Id.* at *4. Noting that the application for fees was under $4,000, whereas the application in *Pelletier* was roughly $9,000, the Magistrate Judge allowed "3.15 hours for

12

preliminary tasks, including 0.75 hours for preparation of the complaint, summons, and *in forma pauperis* petition, and 1 hour to review the Commissioner's notice of denial, to review the file, and to write a letter to Ms. Pearson." *Id.* The Magistrate Judge went on to write that, "[i]n light of the efficiencies achieved by the use of paralegals for most substantive work," she was "not inclined to recommend that the Court cut in half a request for what amounts to only 5.75 hours of attorney preparation, review, and oversight." *Id.* at *4-5. The Magistrate Judge approved a total fee of $2,954.12. *Id.* at *7. Here, the submitted bill was for $3,251.77. *Itemization* at 2.

### H. *Pelletier v. Social Security Commissioner: 2017*

The Plaintiff is correct that Chief Judge Torresen's 2017 *Pelletier* decision, favors his position. In *Pelletier*, the Plaintiff's attorney (again the same Plaintiff's lawyer as in this case) submitted a bill for 8.4 hours of attorney time. *Pelletier*, 1:17-cv-00073-NT, *Order on App. for EAJA Fees and Expenses* at 1 (ECF No. 23). The Commissioner objected to 2.1 of the hours of attorney time, claiming that this time "reflect[ed] work that could have been done by a paralegal." *Id.* at 1. The Chief Judge found that "the Plaintiff is entitled to be compensated 8.4 hours of attorney time at the reasonable hourly rate of $198.15." *Id.* at 1-2. Digging into the underlying motion and response in *Pelletier* confirms that the Chief Judge rejected the very argument the Commissioner is now making. The Commissioner's list of objections to specific entries in *Pelletier* is nearly identical to the list of her objections in this case. *See id.*, *Def.'s Opp'n to Pl.'s EAJA App. for Fees and Expenses* at 4 (ECF No. 20). Thus, the

13

underlying motion and objection in *Pelletier* make evident that the Chief Judge rejected the same argument that the Commissioner is making here.

## I. Attorney Jackson's Bills

The Commissioner's repeated insistence that the lines between a lawyer's and paralegal's work can be clearly demarcated runs contrary to what the Court understands is the modern practice of law, where the lawyer and paralegal work together as a team. The cited cases, all involving Attorney Jackson's law office, illustrate this point. In *Pearson*, the Magistrate Judge noted that Attorney Jackson charged 5.75 hours out of a total bill of $3,992.87, and 29.55 hours were charged at a paralegal rate or $2,955.00. 2012 U.S. Dist. LEXIS 23359, at *1, 3; No. 1:11-cv-00252-DBH, Attach. 1, Ex. A (ECF No. 14). In *Haskell*, Attorney Jackson charged 5.55 hours or $1,012.88 out of a total bill of $4,912.88, and thirty-nine hours were charged at a paralegal rate or $3,900. 2012 U.S. Dist. LEXIS 58178, at *4; No. 1:11-cv-00289-GZS, Attach. 1, Ex. A (ECF No. 16). In the 2017 *Pelletier* case, Attorney Jackson charged 8.4 hours or $1,664.46 out of a total bill of $2,572.96, and 17.35 hours were charged at a paralegal rate or $1,908.50. 1:17-cv-00073-NT, Attach. 1, Ex. A (ECF No. 19). In this case, Attorney Jackson charged 15.80 hours or $3,130.77 out of a total bill of $3,251.77, and 1.10 hours were charged at a paralegal rate or $121. *Pl.'s Mot*. Attach. 1, Ex. A.

The Court sees nothing inherently wrong with a lawyer doing one task in one case and a paralegal doing the same task in another and each charging their usual rates. In busy law office that specializes in Social Security cases and does a high

volume, the Court suspects that the lawyer and the paralegal go from task to task, and the person who has the time just does it. Thus, in *Haskell*, the Magistrate Judge rejected the Commissioner's major position here that some of the claimed attorney time should be reduced to a rate lower than a lawyer's because the work should have been done by a paralegal. *Id.* at *3 ("There is more than one way to allocate work in these matters and the allocation here appears to be one reasonable approach") (quoting *Pearson*, 2012 U.S. Dist. LEXIS 23359, at *4-5). This, in the Court's view, is the correct, pragmatic way to look at the issue.

It is noteworthy that among these four bills, admittedly a small sample size, there is very little variation among the totals, the top bill being $4,912.99 and the bottom $2,572.96. In fact, the bills where the paralegal time was greatest had the highest totals, not the lowest. It may be that Attorney Jackson is more efficient than the paralegal doing the same task and, therefore, when he charges a greater percentage of the time, the total bill is not perceptibly affected.

In short, the Court views secretarial tasks as distinct from paralegal duties. The notion that secretarial tasks should not be compensated at a lawyer's rate seems unarguable, but the extension to paralegal tasks is questionable. When a lawyer does a task a paralegal could perform, this does not make the lawyer a paralegal.

The Court does not conclude that it is incumbent upon a lawyer in these circumstances to decide either as the task is being done or after, whether it could be defined as paralegal work and therefore should be billed at a lower paralegal rate. There is simply too much "gray area of tasks" between what lawyers do for office work

and what their paralegals do. *Missouri*, 491 U.S. at 288 n.10. If there is an indication of bad faith, namely that a lawyer is deliberately manipulating the billing system to push out higher bills, it would be one thing, but there is no such allegation here, and the Court doubts there could be. By contrast, if a lawyer is doing secretarial work, the lawyer does have the obligation not to bill clerical tasks at a lawyer's rate, but the Commissioner is not contending here that this happened.

### J. Summary

*Haskell*, *Pearson*, and *Pelletier* are helpful in guiding this Court's ruling. The principles that emerge from these Magistrate Judge cases include: (1) rewarding the use of paralegals in Social Security cases to reduce the bill, (2) rejecting strict judicial line-drawing between work that must be done by a paralegal as opposed to a lawyer, (3) allowing the lawyer some flexibility in determining what tasks for a particular case are done by the lawyer and what tasks by the paralegal, and (4) measuring the reasonableness of the application in part by evaluating the total bill as opposed to dicing its individual items. To this list, the Court adds that there is a distinction between a lawyer performing strictly secretarial tasks and performing tasks that a paralegal may also perform. If a lawyer does the work, the former may not be billed at a lawyer's rate; the latter may.

## IV. CONCLUSION

Having performed a de novo review, the Court OVERRULES the Defendant's Objection to the Magistrate Judge's Recommended Decision on Plaintiff's Application for Attorney Fees (ECF No. 28) and AFFIRMS the Recommended Decision on

16

Application for Attorney Fees (ECF No. 27). The Court GRANTS the Plaintiff's EAJA Application for Fees and Expenses (ECF No. 24) in the total amount of $3,229.77.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 12th day of June, 2018